NORTHERN MASSACHUSETTS STREET RAILWAY COMPANY *vs.* INHABITANTS OF WESTMINSTER.

Worcester.   May 21, 1917. — June 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Tax,* On poles and wires, Street railway. *Street Railway. Words,* "Location," "Right of way."

Under St. 1913, c. 458, poles and wires owned by a street railway corporation and used by it for the transmission of electricity, which are erected on the land of other persons under an easement, lease or license, are taxable to such corporation in the cities and towns in which they are erected.

PETITION, filed in the Superior Court on December 4, 1916, by the Northern Massachusetts Street Railway Company under St. 1909, c. 490, Part I, § 77, for the abatement of a tax assessed by the town of Westminster as of April 1, 1916, upon a high tension power transmission line used by the petitioner in connection with the operation of its street railway in that town.

The case was heard by *Jenney,* J., upon an agreed statement of facts, which, among other statements, contained the following: "The petitioner is a street railway corporation duly organized

under the laws of this Commonwealth, owning and operating a street railway, a part of which is located in said town of Westminster in said county of Worcester, and a part of its property there situated consists of a high tension power transmission line, so called, running over a course distinct from the course of its tracks, used for the transmission of electric current for the operation of the petitioner's said street railway and consisting of poles and wires thereon, all erected on private land not owned in fee by said petitioner but belonging to persons other than the petitioner, said petitioner owning, by lease or purchase, only the right to maintain on said private land of others its poles and wires thereon as aforesaid; that the electric current transmitted through said power transmission line, although used by the petitioner for the operation of its street railway as aforesaid, is manufactured and furnished to the petitioner by another private corporation and is purchased under contract between said other corporation and the petitioner and delivered into the said transmission line, the property of the petitioner as aforesaid."

The petitioner asked the judge to make the following rulings:

"2. Under the pleadings and facts of this case the petitioner is entitled to an abatement of so much of the tax assessed to it in 1916 by the town of Westminster as was assessed upon its high tension power transmission line (consisting of poles and wires thereon, erected upon private property not owned by the petitioner, but over which it owns a right of way for the maintenance of said power transmission line), and to judgment for $172.52, the agreed amount of said portion of the tax and interest.

"3. Under the pleadings and facts of this case the petitioner is entitled to an abatement of the tax assessed in 1916, by the town of Westminster upon its high tension power transmission line, consisting of poles and wires thereon erected upon a right of way owned by the petitioner over private land, and to judgment for $172.52, the agreed amount of said tax with interest.

"4. Under the pleadings and facts in this case the petitioner's high tension power transmission line consists of poles and wires thereon used in connection with the operation of its street railway over a course distinct from the course of its tracks, erected upon private land upon a right of way owned by the petitioner."

The judge refused to make these rulings, and found that the

petitioner was not entitled to an abatement. He ordered judgment for the respondent; and the petitioner alleged exceptions.

The case was submitted on briefs.

*A. L. Green* & *F. F. Bennett,* for the petitioner.

*W. A. Loughlin* & *J. F. McGrath,* for the respondent.

DE COURCY, J. The petitioner in 1916 owned and maintained in the respondent town a high tension power transmission line, which was used in conveying electric current for the operation of its street railway. This line was erected on private land of persons other than the petitioner; the latter owning, by lease or purchase, only the right to maintain its poles and wires over such private land of others. The respondent town assessed and levied a tax on this transmission line, and the assessors refused to abate the same, whereupon the petitioner paid the tax under protest and brought this appeal in the Superior Court under St. 1909, c. 490, Part I, § 77. It is agreed that if said power transmission line "was not locally taxable by said town, but was illegally assessed by said assessors," the petitioner is entitled to judgment for a stipulated sum; otherwise judgment is to be entered for the respondent.

The statute under which these poles and wires were taxed is St. 1913, c. 458, which further amended St. 1909, c. 490, Part I, § 23, and reads as follows: "Tenth: Underground conduits, wires and pipes laid in public streets, except such as are owned by a street railway company, and poles, underground conduits and pipes together with the wires thereon or therein laid in or erected upon private property or in a railroad location by any corporation, except such poles, underground conduits, wires and pipes of a railroad corporation laid in or erected upon the location of such railroad, and except such poles, underground conduits, wires and pipes laid in or erected upon any right of way owned by a street railway company, shall be assessed to the owners thereof in the cities and towns in which they are laid or erected." Plainly this statute made the street railway company taxable for the poles and wires constituting its transmission line unless they were "erected upon any right of way owned by" it. And the controversy narrows down to the meaning of these words as used in the statute.

For the history of the legislation relating to the taxation of

poles and wires, to and including St. 1909, c. 439, it is enough to refer to the case of *Connecticut Valley Street Railway* v. *Northampton,* 213 Mass. 54, where the subject is exhaustively treated. It was therein held that by the term "rights of way" as used in that statute was meant merely the rights which a street railway company has to lay and use tracks in streets already appropriated to the uses of public travel. The Tax Commissioner, in his report to the Legislature, for the year ending November 30, 1912, made the following recommendation: (page 12) "Chapter 439 of the Acts of the year 1909 provided, among other things, that poles and wires of corporations located upon land which was not owned by the corporation should be taxed to the corporation. Before the passage of this act such poles and wires were being taxed to the owner of the land, and substantial injustice was accomplished by such taxation. With reference to the taxation of poles and wires thus located on private land, street railway companies were exempted from this act of 1909. There are a few cases in the Commonwealth where a street railway company has erected a line of poles and wires across private land to which it has secured only an easement. Under the present statute such poles and wires must be taxed as real estate belonging to the owner of the land. In my judgment there is no more reason for so taxing these poles and wires to the owner of the land than there would be in taxing poles and wires of other classes of corporations to the landowner instead of to the corporation which owns them. I therefore recommend the passage of an act establishing the same conditions for the taxation of the poles and wires of street railway companies as now exist for like property of other corporations."

Admittedly the statute under consideration (St. 1913, c. 458) was enacted in response to this suggestion. It was entitled "An Act relative to the taxation of the poles and wires of street railway companies." When read in the light of its history it seems apparent that the Legislature intended thereby to tax to their owners the poles and wires which were upon private property of others, and that the exception in favor of street railways, like that in favor of railroads, applies only to the poles and wires on the property which is owned by it and used as a part of its location. The failure to use the word "location" instead of

"right of way," well may have been due to the fact that by the general railroad and street railway law (St. 1906, c. 463, Part III, § 1) the word "location," as applied to a street railway, had been defined as meaning the grant of the right to construct, maintain and operate a street railway "in a public way or place." The result of the statute is to make poles and wires of the company on private land of another like those on the public ways, personal property for purposes of taxation, subject to local taxation, and to be deducted in computing the franchise tax under St. 1909, c. 490, Part III, § 41, cl. 2.

Without undertaking a comprehensive interpretation of the term "right of way" as used in this section, plainly it does not apply to the facts in this case, where the petitioner has only the right to erect poles and string wires on land of different people, without having an exclusive right over any defined area. See St. 1911, c. 442; *Connecticut Valley Street Railway* v. *Northampton*, 213 Mass. 54, 64, 65.

It follows that the petitioner's exceptions must be overruled, and in accordance with the stipulation above referred to the entry must be

*Judgment for the respondent.*