We agree with the Tax Commissioner's statement:
"It is the use of the fuel which is determinative and, if fuel is used to propel a motor vehicle upon the highway, such fuel is taxable." But that is not our case here.
Unless the applicable statutes show clearly that the use of the fuel as here used is taxable, any ambiguity shall be resolved in favor of the taxpayer.
This well settled rule is illustrated by the language of Judge Marshall in the case of Caldwell v. State, 115 Ohio St. 458,461, 154 N.E. 792:
"The rule which has been often declared, and which was followed in that case [Cassidy v. Ellerhorst, 110 Ohio St. 535,144 N.E. 252, 42 A.L.R., 372], is that, *Page 486 
where there is ambiguity or doubt as to legislative intent, the doubt should be resolved in favor of the person upon whom the burden of taxation is sought to be imposed, and that language employed in a taxation statute should not be extended by implication beyond its clear import, or to enlarge its operation so as to embrace subjects of taxation not specifically named. This rule is so well settled as not to be longer debatable. It is supported both by authority and reason. In the interpretation of a contract the document is construed strictly against the person who prepared it, and favorably to the person who had no voice in the selection of the language. In a statute relating to the rights of citizens, as between themselves, a reasonable rule of interpretation is followed without favor to any of the parties affected by it. But in statutes where the state is involved, on the one part, and the citizen, on the other, by analogy to the same rule of interpretation governing contracts, the Legislature having chosen the language, that language will not be extended by implication beyond its clear import. Thus it is that in a penal statute, or a statute levying a tax, a rule of strictness will be followed as against the sovereign and a rule of favor as toward the citizen. This does not, of course, mean that by a simple showing of ambiguity, or of doubtful language, a taxation statute must fail entirely. The language employed should receive a fair interpretation, but its operation will never be extended by implication to embrace subjects not specifically named."
In paragraph two of the syllabus in the case of Slingluff v.Weaver, 66 Ohio St. 621, 64 N.E. 574, it was held:
"But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making *Page 487 
body, there is no occasion to resort to other means of interpretation. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."
When the General Assembly enacted the several statutes levying a tax upon the use of motor fuel the clear intention was to distribute the cost of road construction and repair equitably among those persons using the privilege of driving motor vehiclesupon such highways. We do not find it to be the intention of the General Assembly to tax the use of fuel suitable for driving or propulsion when such fuel instead of being used for such purpose is used for furnishing power for operating machinery used in repairing and maintaining the highways. It is the use to be made of the fuel that determines taxability. This is clear from an examination of the statutes levying the tax.
Section 5527, General Code, provides in part:
"For the purpose of providing revenue for maintaining the state highway system of this state for widening existing surfaces on such highways, for resurfacing such highways, for enabling the several counties of the state to properly maintain and repair their roads and for enabling the several municipal corporations of the state properly to maintain, repair, construct, clean and clear the public streets and roads and for the purchase and maintenance of traffic lights and repave their streets [sic], and for supplementing revenue already available for such purposes,and for distributing equitably among those persons using theprivilege of driving such motor vehicles upon such highways andstreets a fair share of the cost of maintaining and repairing thesame, an excise tax is hereby imposed on all dealers in motor vehicle fuel upon the use, distribution or sale within the state *Page 488 
by them of motor vehicle fuel at the rate of two cents (2c) per gallon so used, distributed or sold, to be computed in the manner hereinafter set forth; provided, however, that no tax is hereby imposed upon or with respect to the following transactions * * *." (Italics ours.)
Section 5541, General Code, provides:
"For the purpose of providing revenue for supplying the state's share of the cost of constructing, widening and reconstructing the state highways of this state, and also for supplying the state's share of the cost of eliminating railway grade crossings upon such highways, and also for enabling the several counties, townships and municipal corporations of the state properly to construct, widen, reconstruct and maintain their public highways, roads and streets, and for paying the costs and expenses of the Department of Taxation incident to the administration of the motor vehicle fuel laws, and supplementing revenue already available for such purposes, an excise tax is hereby imposed on all dealers in motor vehicle fuel, upon the use, distribution, or sale within the state by them of motor vehicle fuel, at the rate of two cents (2c) per gallon so used, distributed or sold, subject to the specific exemptions therein set forth, to be reported, computed, paid, collected, administered, enforced and refunded, and the failure properly and correctly to report and pay same penalized in exactly the same manner as is provided in Sections 5527 to 5536-1b, both inclusive, of the General Code; and all of the provisions contained in said Sections 5527 to 5536-1b, both inclusive, of the General Code, relating to motor vehicle fuel excise taxes shall be, and the same hereby are re-enacted and incorporated as if specifically set forth herein; which tax shall be in addition to the tax imposed under said Sections 5527 to 5536-1b of the General Code."
Section 5534, General Code, provides in part: *Page 489 
"Any person who shall use any motor vehicle fuel on which the tax herein imposed has been paid, for * * * any purpose other than the propulsion of motor vehicles upon the highways of this state shall be reimbursed in the amount of the tax so paid on such motor vehicle fuel as hereinafter provided."
The words, "driving," and, "propulsion," are not used as words of art in the motor fuel use and sales tax statutes and are, therefore, to be given their generally understood meanings. Both of the words connote forward movement. Propulsion is defined in Webster's New International Dictionary (2 Ed.), as follows: "1. Act of driving out or forth; expulsion; ejection. Obs. 2. Act of driving forward or ahead; act or process of propelling; as, steampropulsion of ships. 3. Something that propels; a propulsive or inciting force, influence, or the like." "Drive" is defined,ibid., as follows: "To impel or urge onward in a direction away from, or along before, the impelling force or agency; variously: to cause to move on; to urge onward, as with blows; as, to drive
cows to pasture; to communicate a forward motion to, as by pressure; to push forward; as, to drive a nail; a ship driven by wind and tide; to give a forward impetus to; to propel; impel."
That use of all fuel suitable for use as motor fuel is not taxable is shown by Section 5529-4, General Code, where it is provided in part:
"In any action or judicial proceeding with reference to the collection of any tax or taxes imposed by the state of Ohio upon motor vehicle fuel, or any penalties or interest imposed by law in connection therewith, a copy of the finding of the Tax Commissioner as to the taxable gallonage of any dealer and the amount of any tax and penalty and interest due thereon, duly certified by the Tax Commissioner, shall constitute prima facie evidence of the truth of the facts therein *Page 490 
contained and thereupon the burden of proof shall be upon such dealer to show that such finding was incorrect and contrary to law." (Italics ours.)
Section 5534, General Code, in respect of refunds provides in part:
"Such person shall file with the Tax Commissioner an application for refund, stating the quantity of fuel used for the purposes other than the propulsion of motor vehicles as set out in this section."
Section 5526, General Code, contains the following definition:
"`Motor vehicles' shall mean and include all vehicles, engines, machines, or mechanical contrivances which are propelled by internal combustion engines or motors."
It is to be noted that the term, "motor vehicles," is limited to such vehicles as are propelled by the use of motor vehicle fuel. Under the same section, motor vehicle fuel is limited to volatile or inflammable liquid commonly or commercially used or usable for the purpose of generating power for the propulsion ofmotor vehicles. Specifically exempted by such section is the use of diesel fuel oil except where such oil is used for the purpose of generating power for the propulsion of motor vehicles upon the public highways.
We are not unmindful that Sections 5542-1 to 5542-9, General Code, were repealed in 122 Ohio Laws, 807, but were continued in force by Section 5543, General Code, for the purpose of governing the reporting, assessing and collecting of taxes, et cetera.
In the definition section as set out in 122 Ohio Laws, 312, "liquid fuel" is defined instead of "motor vehicle fuel" and this section, now conditionally repealed, specifically exempted diesel fuel oil except when used for the purpose of generating power for the propulsion of motor vehicles upon the public highways.
While the motor vehicle fuel use and sales tax laws *Page 491 
have been changed during the period for which the assessments herein were made, the purpose of the levy has remained the same throughout and we have used the latest statutory enactments and noticed changes in substance other than in rates, pointing out as we have above, the change in terms from liquid fuel to motor vehicle fuel.
That the General Assembly recognized there was a difference in the use of power generated is shown in the following language of Section 5542-1 (122 Ohio Laws, 312), now conditionally repealed:
"The term `liquid fuel' however, shall not include the products * * * diesel fuel oil, or any other similar products, except when such products are sold for use or are used either alone or as part of a mixture, blend or compound for the purpose of generating power for the propulsion of motor vehicles upon the public highways." This same language is continued in the latest amendment of Section 5526, General Code.
The Tax Commissioner has carefully traced the history of the tax on the use of motor vehicle fuel. He points out that prior to April 1, 1943, the use of fuel oil which was used or usable for the purpose of generating power for the propulsion of motorvehicles on the public highways was taxable. Throughout his brief he assumes that the definition of motor vehicle fuel ends with the words, "for the purpose of generating power." Whereas, in so stopping, he has omitted the balance of the sentence which reads, "for the propulsion of motor vehicles upon the public highways." He then proceeds to quote from the act effective April 1, 1943 (120 Ohio Laws, 23), which contains the same language, "for the purpose of generating power for the propulsion of motor vehicles upon the public highways." This same language is to be found in the act effective September 13, 1947 (122 Ohio Laws, 303), and likewise in each and every act down to the present *Page 492 
where a motor vehicle fuel is defined. The use of diesel oil is made taxable only where such oil is used to generate power for the propulsion of motor vehicles upon the public highways.
Where fuel oil which meets the definition of motor vehicle fuel is used for any purpose other than propelling motor vehicles on the public highways, the use of such fuel oil is not taxable, or if taxed, the tax is to be refunded. (See Section 5534, General Code. See, also, 120 Ohio Laws, 26, 120 Ohio Laws, 23, 122 Ohio Laws, 312, Section 5543, General Code, and Section 5 (a) of Article XII of the Ohio Constitution.)
Apportionment of the tax to the amount of driving done is automatic. The tax is levied on a per gallon basis. Increased use of the highways by motor vehicles results in a proportionate increase in tax, as more gallons are burned. However, when machinery powered by the same fuel oil is not used for the purpose of the driving or propulsion of a vehicle over the highways, but, on the contrary, is used solely for the purpose of repairing the highways, we should see at once that such latter use of the fuel does not come within the stated purpose of the General Assembly. In other words, road machinery used for the repair of highways but not driven or propelled on such highways is not in the class of motor vehicles "which are propelled by internal combustion engines or motors." (Section 5526, General Code.)
Placing a tax on the use of fuel used to power road machinery used exclusively for constructing or maintaining the highways does not come within either the letter or spirit of the motor vehicle fuel use tax law. While we must construe the term, "motor vehicle," as a term of art, yet we should not depart entirely from actualities or the realistic approach and especially we should not overlook that a part of the statutory *Page 493 
definition limits the term to such contrivances as arepropelled.
It appears in the record that a grader will do many classes of work. It will do trenching, blade mix, hot mix and all kinds of leveling; it is used to widen roads, make berms and ditches, work on berms, leveling, putting in stone, and transporting dirt. Such equipment does not travel on the highways at all but is brought to and removed from the job on six-wheel carryalls propelled by a tractor.
To affirm the decision in this case would be to condone the assessing of an excise tax for the use of a privilege that the owners of the machinery do not attempt and one that is not taxable. This road machinery is not used or usable for the purpose of conveying freight or passengers on the open road. To so hold would distort the common understanding of the definition of the word, "vehicle," which is defined by Webster, supra: "1. That in or on which a person or thing is or may be carried; * * * any moving support or container * * * for the conveyance of bulky objects. * * *"
As pointed out by appellant, "a diesel truck fits this definition, but a grader does not. The grader is not designed to `carry' and it does not carry, either freight or passengers. It is a digging and shoving device."
The purpose of the law is to tax users of the highways rather than builders or repairers of the highways. The excise tax is designed to reach highway travelers not highway builders.
We are of the opinion that the decision of the Board of Tax Appeals appealed from is unreasonable and unlawful. Therefore, such decision is reversed and vacated.
Decision reversed. *Page 494 
WEYGANDT, C.J., HART and ZIMMERMAN, JJ., concur.
TAFT, J., concurs in paragraphs two and three of the syllabus but dissents from paragraphs one and four of the syllabus and from the judgment.
MATTHIAS and STEWART, JJ., dissent.