[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 627.]

LAKEFRONT LINES, INC., APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *Lakefront Lines, Inc. v. Tracy*, 1996-Ohio-50.]

*Taxation—Motor vehicle fuel tax—R.C. 5735.14 does not exempt from taxation fuel used in operating a motor vehicle's air conditioning equipment or in idling the vehicle.*

(No. 95-1216—Submitted February 1, 1996—Decided June 26, 1996.)

APPEAL from the Board of Tax Appeals, Nos. 93-H-1125, 93-H-1126, 94-H-69, 94-H-70, 94-H-71 and 94-H-72.

_____

{¶ 1} Lakefront Lines, Inc., appellant, carries passengers in its charter coach business. The engine that powers the coach bus also runs an air conditioning compressor that cools the passenger compartment for the comfort of Lakefront's passengers. The compressor is mounted near the engine compartment and is driven by two high-horsepower belts that take power from the binary cylinder or directly from the crankshaft of the coach engine. The air conditioning equipment also acts as a defroster because it dehumidifies the vehicle in winter or summer.

{¶ 2} Lakefront purchases fuel to run the buses. Operating the air conditioning equipment increases fuel consumption for the bus. Lakefront also consumes fuel while running its buses at idle. The buses spend considerable time off the road while its passengers are out of the buses visiting tour sites. Lakefront idles the engines to operate the air conditioning equipment to maintain a comfortable temperature for the return of the passengers.

{¶ 3} R.C. 5735.05 imposed an excise tax on motor vehicle fuel. R.C. 5735.14 allows reimbursement to a person who uses fuel on which the tax has been paid for "any purpose other than the propulsion of motor vehicles upon highways" within Ohio. Lakefront claims that the fuel consumed in operating the air

conditioning equipment and idling the buses was not for the propulsion of the buses upon public highways. Accordingly, it applied for refunds of motor vehicle fuel tax under R.C. 5735.14. The commissioner denied the refunds, ruling that operating air conditioning for the comfort of a motor vehicle's passengers was part of operating the motor vehicle. The commissioner did not address the claims for refunds for idling the buses. Lakefront appealed the commissioner's denials to the Board of Tax Appeals ("BTA").

{¶ 4} At the BTA, Lakefront presented tests and a study attempting to establish the amount of fuel consumed under typical conditions in operating air conditioning equipment and idling its buses. Lakefront did not present any evidence measuring how much fuel it actually consumed in these two activities during the refund period.

{¶ 5} Nevertheless, the BTA affirmed the commissioner's order. First, the BTA ruled that Lakefront had not raised the issue of the exemption of "idling time" in its applications for refund or in its appeals to the BTA. Thus, the BTA declined jurisdiction over this issue.

{¶ 6} Without deciding whether Lakefront could claim exemption for the fuel consumed in air conditioning the buses, the BTA found that Lakefront had not met its burden of proof. The BTA questioned the tests and study Lakefront presented. It concluded that the tests and study only approximated the fuel consumed and did not accurately measure it.

{¶ 7} The cause is now before this court upon an appeal as of right.

————————————

*Leonard A. Carlson,* for appellant.

*Betty D. Montgomery*, Attorney General, and *Janyce C. Katz,* Assistant Attorney Generaly, for appellee.

————————————

***Per Curiam.***

2

**{¶ 8}** We hold that Lakefront specified all the errors it claims, but we rule that motor fuel used for air conditioning and idle time is used for the propulsion of or driving motor vehicles upon public highways. Thus, we hold that R.C. 5735.14 does not exempt the fuel consumed for these uses from the motor fuel tax.

**{¶ 9}** First, as to raising the issue of idling consumption, Lakefront supported some of its applications for refund with calculations that included refund amounts for fuel used while the buses were idling. Furthermore, in paragraphs 11 and 12 of its notices of appeal to the BTA, Lakefront claims that the commissioner failed to distinguish between fuel used to propel the motor vehicle and fuel used to operate the motor vehicle while stationary. Lakefront thus set forth its claim for refund for idling in its applications and specified the commissioner's denial of this as error under R.C. 5717.02.

**{¶ 10}** Next, as to the merits of the exemption, R.C. 5735.05(A) levies "an excise tax * * * on all dealers in motor vehicle fuel upon the use, distribution, or sale within the state by them of motor vehicle fuel" to, among other purposes, "distribute equitably among those persons using the privilege of driving motor vehicles upon such highways and streets the costs of maintaining and repairing them." A user of motor vehicle fuel may seek a refund of the tax paid under R.C. 5735.14:

"Any person who uses any motor vehicle fuel, on which the tax imposed by section 5735.05 of the Revised Code has been paid, for * * * any purpose other than the propulsion of motor vehicles upon highways * * * of this state, shall be reimbursed in the amount of the tax so paid on such motor vehicle fuel as provided in this section * * *."

**{¶ 11}** Lakefront relies for support on *Shafer v. Glander* (1950), 153 Ohio St. 483, 41 O.O. 490, 92 N.E.2d 601. In *Shafer*, the court exempted fuel consumed by highway builders to propel vehicles used to build and repair highways. The

vehicles did not convey freight or passengers on highways. The *Shafer* court, in paragraph two of the syllabus, stated:

"The use of diesel oil is exempt from the excise tax except where such oil is used for the purpose of generating power for the *driving or propulsion* of motor vehicles on the public highways." (Emphasis added.)

{¶ 12} After declaring this refund provision to be an exemption, the *Shafer* court then applied an inappropriate principle in analyzing the exemption. It declared that "[a]ny ambiguity in a law imposing a tax shall be resolved in favor of the taxpayer." *Id.*, paragraph three of the syllabus.

{¶ 13} However, we apply this interpretive principle when an ambiguous statute defines a subject of taxation. *Zalud Oldsmobile, Inc. v. Limbach* (1994), 68 Ohio St.3d 516, 628 N.E. 2d 1382. For statutes that exempt items from taxation, the type of statute at issue in *Shafer* and here, we strictly apply the statute against the exemption. *Vought Industries, Inc. v. Tracy* (1995), 72 Ohio St.3d 261, 264, 648 N.E. 2d 1364, 1366. "[T]axation is the rule, and exemption is the exception. Since the reduction depends on legislative grace, the statute must clearly express the exemption, *Cleveland v. Bd. of Tax Appeals* (1950), 153 Ohio St. 97, 99-100, 41 O.O. 176, 178, 91 N.E.2d 480, 482, paragraph one of the syllabus, and a taxpayer must show his entitlement to it, *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus." *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102, 104, 554 N.E.2d 1310, 1312. See, also, *Kroger Co. v. Lindley* (1978), 56 Ohio St.2d 138, 141, 10 O.O.3d, 319, 320, 382 N.E.2d 1359, 1361, which also calls the R.C. 5735.14 refund an exemption from the fuel excise tax. Since R.C. 5735.14 exempts fuel from the fuel excise tax, we strictly apply its terms.

{¶ 14} The *Shafer* court concluded that the General Assembly, in levying this tax on the use of motor fuel, intended "to distribute the cost of road construction and repair equitably among those persons *using the privilege of driving motor*

4

*vehicles upon such highways*." (Emphasis <u>sic</u>.) 153 Ohio St. at 487, 41 O.O. at 492, 92 N.E. 2d at 603. The *Shafer* court considered the definitions of "drive" and "propulsion." It did not regard these terms as "words of art" but words "to be given their generally understood meanings." 153 Ohio St. at 489, 41 O.O. at 493, 92 N.E.2d at 604.

{¶ 15} While both terms connote, as the *Shafer* court stated, "forward movement," *id.*, these terms have more comprehensive meanings. Webster's Third New International Dictionary of the English Language (1986) 1820, defines "propulsion" as "2: the action of driving forward or ahead: action or process of propelling."

{¶ 16} This same dictionary defines "propel" as "2: to impel forward or onward: push ahead by imparting motion: give motive power to: drive onward."

{¶ 17} Of particular interest to us is this dictionary's definition, *id.* at 1817, of "drive": "*vt* * * * 2 * * * c: to operate the controls of (a locomotive) or to operate the mechanism and controls and direct the course of (as a motor vehicle or speedboat) * * * *vi* * * * 5 * * * b: *to operate and steer a motor vehicle*." (Emphasis added.)

{¶ 18} Thus, these definitions mean more than providing forward motion to a vehicle. They mean to operate and steer a motor vehicle. Included in operating the buses at issue is running their air conditioning equipment and idling the buses for the comfort of the passengers. Therefore, we hold that R.C. 5735.14 does not clearly state an exemption from the motor fuel tax for fuel used in operating a motor vehicles's air conditioning equipment or in idling the vehicle.

{¶ 19} Accordingly, we affirm the decision of the BTA.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER AND COOK, JJ., concur.

WRIGHT, J., not participating.

_____